Melanie **BIRKS**, Plaintiff,

v.

**JACK INGRAM MOTORS, INC., Defendant.**

No. CIV.A. 2:03CV1283–T.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 16, 2004.

---

Walter Thomas Birks, Montgomery, AL, for Plaintiff.

Steven Michael Stastny, S. Andrew Scharfenberg, Ford & Harrison LLP, Birmingham, AL, for Defendant.

## OPINION

MYRON H. THOMPSON, District Judge.

Plaintiff Melanie Birks brings this lawsuit alleging that her former employer, defendant Jack Ingram Motors, Inc., paid her less than similarly situated male employees in violation of the Equal Pay Act of 1963, 29 U.S.C.A. § 206(d), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, and engaged in retaliatory termination against her in violation of Title VII. Birks also asserts a pendent state-law claim that management of Jack Ingram Motors slandered her. The court's jurisdiction is proper under 28 U.S.C.A. § 1331 (federal question), 42 U.S.C.A. § 2000e–5(f) (Title VII), 29 U.S.C.A. § 216(b) (Equal Pay Act), and 28 U.S.C.A. § 1367 (supplemental).

This case is now before the court on Jack Ingram Motor's motion for summary judgment. The summary-judgment motion will be granted.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [his] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [his] case at trial.' " *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) (quoting *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to demonstrate why summary judgment would be inappropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To this end, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

In October 2001, Jack Ingram Motors hired Birks as a Finance and Insurance (F & I) Manager for the company's Value Lot. Subsequently, in response to the request of the company's controller, Patty Caldwell, and president, Ray Ingram, Birks agreed to work on the Mercedes Lot, beginning April 1, 2002.

According to a written pay plan dated April 1, 2002,[1] Birks's pay consisted of the following four components:

---

1. Defendant's Motion for Summary Judgment (Def.'s motion) (doc. no. 13), Ex. 1, Birks

deposition, Ex. 4, Jack Ingram Motors, Inc. Pay Plan. Birks's pay prior to this period is

(1) A base salary of $1,300 per month.

(2) A commission percentage, ranging from 22.5% to 25%, of the pooled F & I gross profit.

(3) A $500 bonus per vehicle, paid if the total number of units sold in a single month exceeded 274 units.

(4) A $500 bonus, dependent upon Birks's service-contract performance.

In addition to the terms specified in her pay plan, Birks received a percentage of any sale in which she assisted. The salesperson would receive 65% of the commission, and Birks would receive the remaining 35%.

In August or September 2002, Birks received a call, asking her to assist in a sale in the Nissan building.[2] Because she was already working with a customer in the Mercedes building, she suggested that Woodham be contacted for assistance. Woodham subsequently confronted Birks in her office, yelling that he did not assist in Nissan deals. He leaned over Birks's desk and pointed his finger in her face, screaming that she should have assisted in the Nissan deal. Later that day, Jack Ingram Motors's human resource director discussed the incident with both Woodham and Birks. Controller Caldwell was present at the meeting. At the human re-

source director's request, Woodham apologized to Birks.

There were no more confrontations between Birks and Woodham until October 16, 2002. At this time and during a meeting in Caldwell's office, Caldwell and Woodham told Birks that she was not meeting her professional responsibilities,[3] including covering deals at the Nissan building. Angered by Caldwell and Woodham's comments and in an effort to recover her composure, Birks left Jack Ingram Motors, without permission, mid-way through her work day.

Although scheduled to work on October 17, Birks failed to appear at Jack Ingram Motors on that day. However, she subsequently telephoned Ingram, the company president, and the two arranged to meet on October 21. During this meeting, Birks handed a letter to Ingram dated October 17, in which she detailed her concerns about pay discrepancies between male and female employees as well as about Woodham and Caldwell's abusive behavior.[4] Birks also clarified that she had not quit her job at Jack Ingram Motors. In response, Ingram told Birks that he would investigate and review her complaints, and he asked her not to work at the company until she had heard further from him.

not relevant to this suit because Birks's claims relate to only the period of time that she served as F & I Manager on the Mercedes lot.

2. Although Tony Woodham, another F & I Manager, originally worked in the Nissan building, he later moved to the Mazda building when the Mazda F & I Manager left. Consequently, until another F & I Manager was hired, the F & I responsibilities in the Nissan building needed to be covered by Woodham or Birks.

3. Birks testified that "I can't remember word for word the terminology that was used, but [Caldwell] and Tony both were very emphatic that I was not doing my job, that I was being,

that I wasn't, wasn't working, that I was sitting over in my office doing nothing, and that they felt like that I wasn't doing any work." Def.'s motion, Ex. 1, Birks deposition at 226:9–16.

4. Birks concluded her letter by asking for a "clear statement of Jack Ingram Motors, Inc. policy regarding fostering a hostile work environment and why male management members get compensated at a rate nearly 50% higher tha[n] female employees who contribute equally or substantially more." Def.'s motion, Ex. 1, Birks deposition, Ex. 2, Birks's Memorandum to Ray Ingram ("Birks's Memo").

Ingram sent Birks a letter, dated October 23, 2002, in which he denied Birks's allegations of pay discrepancies between male and female employees as well as the existence of a hostile-work environment. In addition, Ingram wrote that "by repeatedly leaving the premises without permission or notice and failing to return to work during ... scheduled shifts,"[5] Birks had voluntarily quit.

Birks filed this lawsuit on December 31, 2003.

## III. DISCUSSION

### A. Equal Pay Act

■ In order to establish a prima-facie case under the Equal Pay Act, a plaintiff must show that her employer pays different wages to employees of different sexes "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C.A. § 206(d)(1); *see also Arrington v. Cobb*, 139 F.3d 865, 876 (11th Cir.1998). This prima-facie case requires that a plaintiff demonstrate "that the jobs at issue are substantially similar; a plaintiff does not have to show that the skills or qualifications of the actual male and female employees holding the positions are also substantially equivalent." *Id.* Although job titles and descriptions may be considered, the "controlling factor in the court's assessment of whether two jobs are substantially equal must be actual job content." *Id.*

In support of her prima-facie case, Birks has identified two male employees whose jobs, she argues, were substantially similar

to hers: Tony Woodham and Sloan Roberts. Woodham and Roberts, like Birks, were F & I Managers. As their title suggests, Birks, Woodham, and Roberts assisted customers in the financing and insurance paperwork associated with the purchase of vehicles. Although each manager had primary duties in different buildings with different brands of automobiles, the managers' responsibilities did not differ, with the exception that Birks, unlike Woodham and Roberts, also handled secondary finance deals for the entire dealership. However there is no indication in the record that these secondary finance deals were anything other than incidental to Birks's primary duties. *See, e.g., Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir.1992) (holding that the prima-facie case focuses "on the primary duties of each job, not duties that are incidental or insubstantial."). Consequently, the court finds that Birks has established her prima-facie case that her job responsibilities were "substantially equal" to those of Woodham and Roberts. 29 U.S.C.A. § 206(d)(1).[6]

■ "Once a plaintiff makes out a prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act." *Miranda*, 975 F.2d at 1532–33. These include: " '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.' " *Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C.A. § 206(d)(1)). If the defendant meets this

---

**5.** Def.'s motion, Ex. 1, Birks deposition, Ex. 3, Ingram's letter to Birks.

**6.** Although, as noted below, there are differences among the professional qualifications of Birks, Woodham and Roberts, "[i]n Equal

Pay Act cases, [the court] compare[s] the jobs, not the individual employees holding those jobs." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir.1994).

burden, then the plaintiff must rebut the explanation by "showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender based differential." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir.1995).

Jack Ingram Motors argues that the pay differential between Birks and her co-managers was warranted by exceptions (iii) and (iv). In particular, Jack Ingram Motors contends that Birks's lower salary was due to: her failure to close more secondary deals and thereby earn those commissions; and Woodham's and Roberts's greater experience.

In response to Jack Ingram Motor's first defense that the F & I Managers' salaries were measured by "the quantity or quality of production," 29 U.S.C.A. § 206(d)(1)(iii), Birks points out that she was paid differently from what Woodham and Roberts were paid. In particular, neither Woodham nor Roberts received any commission for secondary sales, but these individuals were paid higher monthly base salaries and a higher percentage of the F & I Group's Pooled Commission (7.5% compared to 11.25%). These higher monthly base salaries and higher percentage commissions resulted in larger gross earnings for Woodham and Roberts. Birks's lower salary was not, therefore, simply the result of her failure to perform a certain number of secondary sales: it was, instead, the result of an entirely different pay scheme between her and her male colleagues. Consequently, according to Birks, Jack Ingram Motors has failed to meet its "heavy" burden of proving this affirmative defense. *Steger v. General Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003).

However, Jack Ingram Motors posits a second and more successful defense—that the pay differential was the result of a factor other than sex, namely the greater experience of Woodham and Roberts. By the time that Birks was hired at Jack Ingram Motors, Woodham had already been working for 33 months and Roberts had been working for 27 months. In addition, prior to their work at Jack Ingram Motors, both men had worked for several years as F & I Managers for Capital Chevrolet, another Montgomery car dealership. In contrast, Birks had not worked as a F & I Manager prior to her job at Jack Ingram Motors.

An "individual's experience, training, or ability" are justifications for pay differentials. *Glenn v. General Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir.1988). In *Irby v. Bittick*, the Court of Appeals for the Eleventh Circuit explained that "[b]usiness reasons, such as experience, are legitimate 'factors other than sex' so long as they can be rebutted." The court went on to note that "[t]ime spent in a position equates with experience in the division ... Time is a measurable quantity one can sufficiently rebut." 44 F.3d at 956. Birks never argues that her experience is commensurate with that of her comparators, and she fails to present any evidence that would indicate that she has equal or more experience in the field of financing and insuring car deals, whether at Jack Ingram Motors or at other car dealerships.

Birks does point out that Jack Ingram Motors, in a memo dated January 16, 2001, indicated that each F & I Manager would receive a "1/3 equal share" of the F & I Group commission.[7] In addition, Birks argues that "There was no wage differentiation of the F & I commission prior to [her,] even when other managers had extra

7. Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support Thereof ("Pl.'s Response") (doc. no. 18), Ex. 3, Pay Structure F & I Personnel.

duties."[8] Although Birks alleges that the fact that commission percentages were not, in fact, distributed equally is proof of gender bias, she fails to provide any rebuttal evidence of pretext that would indicate that the different percentage commissions were anything other than Jack Ingram Motors's effort to compensate more handsomely greater experience; nor does she provide any evidence that the even split of the F & I commission among prior managers was anything other than the result of those managers' comparable professional experiences.

Birks has, therefore, failed to provide affirmative evidence that would suggest that the differential in pay was "pretextual or offered as a post-event justification." *Id.* at 954.

### B. Title VII

Birks asserts two claims under Title VII:(1) a gender-based wage-discrimination claim, and (2) a retaliatory-discharge claim.

### (a) *Gender–Based Wage–Discrimination Claim*

■ Under Title VII, it is an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation . . . because of such individual's . . . sex." 42 U.S.C.A. § 2000e–2(a)(1)." The appropriate framework for evaluating Birks's claim of gender-based wage-discrimination is that established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Miranda*, 975 F.2d at 1528. According to this framework, a plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence; this prima-facie case requires " 'evidence adequate to create an inference that an employment decision was based on a[n]

[illegal] discriminatory criterion.' " *Herawi v. State of Alabama Dep't of Forensic Scis.*, 311 F.Supp.2d 1335, 1344 (M.D.Ala. 2004) (Thompson, J.) (quoting *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). If the plaintiff successfully raises a presumption of illegal discrimination by establishing a prima-facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. Once the defendant satisfies this burden of production, the plaintiff must set forth evidence that would be sufficient to convince a reasonable fact finder that the reason given by the employer is pretextual. *Id.*

Birks has established a prima-facie case of sex discrimination under Title VII because she is a female who has demonstrated, as noted above, that the job she occupied was similar to higher paying jobs occupied by males. *Miranda*, 975 F.2d at 1529. In response, Jack Ingram Motors's burden of production in rebutting the prima-facie case is "exceedingly light," *Perryman v. Johnson Products, Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983), and Woodham's and Roberts's more extensive experience relative to Birks constitutes an adequate rebuttal. *See, e.g., Barber v. Int'l Bhd. of Boilermakers*, 778 F.2d 750, 760–61 (11th Cir.1985) (employee's allegedly greater experience was a legitimate, nondiscriminatory reason for his increased wages and sufficient to rebut the plaintiff's prima-facie case); *Bullock v. Widnall*, 953 F.Supp. 1461, 1474 (M.D.Ala.1996) (De Ment, J.) (applicant's more in-depth experience over the plaintiff was a legitimate, nondiscriminatory reason so as to rebut the plaintiff's prima-facie case).

In her attempt to convince a reasonable fact finder that the explanation given by

---

**8.** Pl.'s Response at 3.

Jack Ingram Motors for the wage differential is pretextual, Birks uses the same evidence presented under her Equal Pay Act claim. In particular, she emphasizes the Jack Ingram Motors's memo from January 2001 which outlines the equal split of the F & I commission among managers. She also points to the allegedly even sharing of commission among previous managers. However this evidence is not convincing because it does not contradict or undermine Jack Ingram Motors's argument that it rewarded greater experience. *Barber*, 778 F.2d at 755 (describing the plaintiff's burden at this point as one of presenting "evidence contradicting the rebuttal evidence"). The deviation from the January 2001 memo may have been justified by the greater experience of Woodham and Roberts over Birks, and there is no evidence in the record that the professional experience of previous F & I Managers differed to the extent that Birks's experience differed from that of Woodham and Roberts. Birks has thus failed to present evidence contradicting Jack Ingram Motors's evidence.

#### (b) *Retaliatory–Discharge Claim*

■ Under Title VII, it is an unlawful employment practice for an employer to discriminate against any of its employees "because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e–3(a). Birks asserts that

Jack Ingram Motors terminated her employment because she complained to Ingram, the company president, on October 21, 2002, about the pay discrepancies and Woodham and Caldwell's behavior.

In order to establish a prima-facie case of retaliation under Title VII, Birks may show that: (1) she engaged in statutorily protected expression; (2) she suffered an adverse-employment action; and (3) a causal connection exists between the two events. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir.1997). "[T]he causal link requirement … must be construed broadly; 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998) (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993)).

With respect to the first element of Birks's prima-facie case, it has been held that complaints regarding sexual harassment in violation of Title VII constitute "statutorily protected conduct." [9] *See, e.g., Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1187 (11th Cir.2001) (quoting 42 U.S.C.A. § 2000e–3(a)) ("One example of 'statutorily protected expression' is 'oppos[ing] any practice made an unlawful employment practice' by Title VII, such as sexual harassment."); *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir.2001) ("Statutorily protected expression includes internal complaints of sexual harassment to

---

9. Birks's letter also alleges "hostile environment" and "slander." Birks's Memo. However er Birks's retaliation claim is asserted under Title VII and is limited to conduct statutorily protected under Title VII. *Pipkins,* 267 F.3d at 1201 ("To establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII").

Although a hostile work environment claim is actionable under Title VII, *see, e.g., Hulsey v. Pride Rests., LLC,* 367 F.3d 1238, 1247–48 (11th Cir.2004), Birks never asserts such a cause of action, whether under Title VII or otherwise. Moreover, Birks's cause of action for slander is asserted only under Alabama state law.

superiors...."). Therefore Birks's complaint regarding "the drastic difference in the pay plan for F & I Managers"[10] constitutes statutorily protected expression.

Birks successfully establishes the remaining elements of her prima-facie case because (1) she suffered an adverse-employment action, in that her employment was terminated, *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997),[11] and (2) arguably a causal connection exists between her complaint and her discharge. "[C]lose temporal proximity between the employee's protected conduct and the adverse-employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.2000). Temporal proximity has been found in longer time spans than the two days at issue here. *See, e.g., Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (close temporal proximity found where plaintiff complained about harassment in late 1994 and January 1995 and then suffered adverse-employment actions in the spring of 1996 and early 1997). Having shown that (1) she engaged in statutorily protected expression; (2) she suffered an adverse-employment action; and (3) a causal connection arguably exists between the two events, Birks has successfully established a prima-facie case.

■ "Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, nonretaliatory reason for the challenged employment action." *Pennington v. City of*

*Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Yet "[t]he ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff." *Id.*

In the instant case, Jack Ingram Motors puts forth, as its legitimate, nondiscriminatory reason for no longer employing Birks, her abrupt departure from the company's premises, during her shift, on October 16, 2002, and her subsequent failure to report for work on October 17. Such a reason is legitimate, since absences from work constitute a valid reason for terminating employment, provided that such a policy is applied equally to all employees. *Gilchrist v. Bolger*, 733 F.2d 1551, 1553 (11th Cir. 1984).

■ In her efforts to prove that her former employer's reason is pretextual, Birks points out that Sloan Roberts, a male employee at Jack Ingram Motors, had previously been allowed to return to his position after having walked off the job. Yet Ingram, the company president, has testified that Roberts, in contrast to Birks, had subsequently provided evidence from his medical providers regarding his health problems and that Ingram thought that he was legally obligated, under the Americans with Disabilities Act, 42 U.S.C.A. §§ 12101–12213, to allow Roberts to return.[12] " '[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.' " *Penning-*

---

10. Birks's Memo.

11. Although Birks asserts that her employment was terminated, Jack Ingram Motors contends that Birks voluntarily quit. Since the court must view all evidence and any factual inferences in the light most favorable to the non-moving party, *Matsushita Elec. In-*

*dus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356, the court will assume that Birks's employment was terminated.

12. Def's Motion (doc. no. 13), Ex: 3, Decl. of Ray Ingram ¶ 8.

*ton,* 261 F.3d at 1267 (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997)). After having conducted an investigation, Ingram concluded that Birks's allegations were groundless, and the record does not indicate that such a conclusion was unfounded. *Phillips v. Joint Legislative Comm.,* 637 F.2d 1014, 1031 n. 52 (5th Cir.1981) ("[T]here is a point at which Title VII does not require an employer otherwise acting in good faith to verify every possible logical assumption on which he might rely."). With regards to Roberts, it was reasonable for Jack Ingram Motors to excuse his unprofessional conduct after having been presented with his health-related reasons documented by medical professionals. In the end, Roberts's and Birks's situations are not similar enough to show that Jack Ingram Motors's reason for not continuing Birks's employment was pretextual.

For the reasons stated above, Birks has failed to rebut Jack Ingram Motors's legitimate, nondiscriminatory reason for no longer employing Birks, and her retaliatory-discharge claim therefore fails.

### C. Slander

Birks alleges that Jack Ingram Motors slandered her because Woodham told Caldwell that Birks was not meeting her professional responsibilities. In order to establish a "prima-facie case" for defamation, Birks must show that "the defendant published a false and defamatory statement concerning the plaintiff to a third person." *Atkins Ford Sales. Inc. v. Royster,* 560 So.2d 197, 200 (Ala.1990). The court need not address whether Woodham's statements were false and defamatory because a crucial element is lacking in Birks's slander claim—publication of the allegedly false and defamatory statement to a third person. *See also McCaig v. Talladega Pub. Co., Inc.,* 544 So.2d 875, 877 (Ala.1989) (noting the requirement, in a cause of action for defamation, for "an unprivileged communication of that [false and defamatory] statement to a third party"). Birks argues that Woodham communicated his statements to Caldwell, eventually resulting in Birks's termination. Yet since Woodham and Caldwell, at the time of the communication, were co-workers at Jack Ingram Motors—the sole defendant in this case—there was no publication to a third party. *See, e.g., Nelson v. Lapeyrouse Grain Corp.,* 534 So.2d 1085, 1093 (Ala.1988) (no publication occurred when allegedly defamatory communication was made by one employee to another); *K–Mart Corp., Inc. v. Pendergrass,* 494 So.2d 600, 604 (Ala.1986) (no publication of allegedly defamatory statements in an employee's separation report where report was not seen by anyone other than corporate managers or employees whose duties included handling the reports); *Dixon v. Economy Co.,* 477 So.2d 353, 354 (Ala. 1985) ("Communications among the managerial personnel of a corporation about the company's business do not constitute a publication....")

Since, even if Woodham's statements were false and defamatory, they were not published to a third party, Birks's slander claim fails.

### IV. CONCLUSION

For the reasons given above, summary judgment is due to be entered in favor of Jack Ingram Motors, Inc. on all claims.

An appropriate judgment will be entered.