PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 28, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-11922

_____

D. C. Docket No. 97-01692-CV-T-17C

MARY HOPE LIPPHARDT,
an individual,

Plaintiff-Appellant,

versus

DURANGO STEAKHOUSE OF BRANDON, INC.,
a Florida Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 28, 2001)**

Before BIRCH, WILSON and FARRIS*, Circuit Judges.

_____

* Honorable Jerome Farris, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

BIRCH, Circuit Judge:

In this case we determine whether a plaintiff who was formerly involved in an intimate relationship with a co-worker is precluded from bringing a claim against the employer for retaliatory discharge when the plaintiff was fired after reporting her ex-boyfriend's harassing conduct to their employer. The district court granted defendant's renewed motion for judgment as a matter of law after a jury found for the plaintiff.[1] We REVERSE.

## I. BACKGROUND[2]

Plaintiff-Appellant, Mary Hope Lipphardt, and Donald Knuth were employees of Defendant-Appellee Durango Steakhouse ("Durango"). Lipphardt began dating Knuth, one of her supervisors, while they were both working at Durango. During this time, their relationship at work was positive and Lipphardt was being considered for an assistant manager position. After they had lived together for approximately one month, Lipphardt ended their personal relationship and moved out of Knuth's apartment.

---

[1]The jury found for Durango on Lipphardt's claim of hostile work environment sexual harassment, and Lipphardt does not appeal that decision.

[2]The facts in this case are contested. However, on review of a motion for judgment as a matter of law, we view the evidence in the light most favorable to the non-moving party. Gupta v. Fl. Bd. of Regents, 212 F.3d 571, 582 (11th Cir. 2000), cert. denied, __ U.S. __, 121 S. Ct. 772 (2001). Therefore, we present the facts in the light most favorable to Lipphardt, which is also consistent with the jury verdict.

Lipphardt contends that, after their personal relationship ended, she began having difficulties with Knuth at work. Generally, Knuth was consistently attempting to convince Lipphardt to resume their intimate relationship. He frequently paged her, called her at work, and left her messages at home while intoxicated. He refused to work with her while at Durango but, on several occasions, brushed up against her in a way that Lipphardt testified was sexual and made her uncomfortable. At one point, Lipphardt claims that Knuth threatened to hurt her or her child.

On 12 December 1996, Lipphardt and Knuth had a confrontation in the restaurant office. Knuth, who had been drinking at the bar for a few hours, followed Lipphardt into the back office and propositioned her. Eventually, Knuth blocked Lipphardt's exit from the office and closed the door. After a heated argument, Lipphardt was able to leave the office 15 minutes later. She told a co-worker that she was afraid of what Knuth would do to her, and another co-worker agreed to stay with Lipphardt until she was able to go home. When Lipphardt left the restaurant that night, Knuth followed her to her car and blocked her from closing her car door, all the while asking her to resume their relationship.

On 13 December 1996, Knuth asked Lipphardt if she was going to report his conduct. Later that evening, after Knuth had a meeting with the general manager

3

of Durango, Lipphardt met with that same manager and a second manager and described Knuth's actions and their affect on her. She also reported the incidents to a regional manager and requested a transfer. While Lipphardt was on a previously-scheduled vacation, the general manager told Knuth that his supervisor was considering firing both Lipphardt and Knuth. According to Knuth, the general manager asked Knuth if he knew anything that could get Lipphardt fired, as the restaurant would rather keep Knuth and "get rid of the bitch." R11-252. Knuth told the general manager that Lipphardt had given free food to employees at a nearby tanning salon in exchange for tanning services.[3] It was established at trial that a different employee was trading food for tanning services, and that Knuth had never actually seen Lipphardt engage in this practice when he made the allegation. Regardless, the general manager recommended that the regional manager fire Lipphardt, and she was fired upon return from vacation. No one followed up with Knuth regarding his allegations before firing Lipphardt.

Lipphardt filed a four-count complaint, alleging hostile work environment sexual harassment, quid pro quo sexual harassment, retaliation, and negligent retention. The district court granted Durango's motion for summary judgment on

---

[3]Durango presented evidence that a different employee informed the general manager that Lipphardt was trading food for tanning services. However, we view the facts in the light most favorable to the nonmoving party and in support of the jury's verdict. Regardless, the timing of the argument, Lipphardt's complaint, and her termination is the same.

4

the quid pro quo sexual harassment charge and, at the close of evidence, its motion for judgment as a matter of law on the claim of negligent retention. The two remaining issues were submitted to the jury, which returned a verdict for Durango on hostile work environment sexual harassment and for Lipphardt on retaliation. Following the trial, the district court granted Durango's motion for judgment as a matter of law on the retaliation claim, and, in the alternative, conditionally granted Durango's motion for a new trial. Lipphardt appeals.

## II. DISCUSSION

A.     Standard of Review

We review the district court's decision to enter a judgment as a matter of law de novo. Gupta v. Fl. Bd. of Regents, 212 F.3d 571, 582 (11th Cir.), cert. denied, __ U.S. __, 121 S. Ct. 772 (2000). In this analysis, "[w]e will not second-guess the jury or substitute our judgment for its judgment if its verdict is supported by sufficient evidence." Id.

We have a well-established standard governing motions for judgment as a matter of law:

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions,

5

the motions should be denied, and the case submitted to the jury. . . . [I]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

Watts v. Great Atl. & Pac. Tea Co., 842 F.2d 307, 309-10 (11th Cir. 1988) (per curiam) (citation omitted).  A party's motion for judgment as a matter of law can be granted at the close of evidence or, if timely renewed, after the jury has returned its verdict, as long as "there is no legally sufficient evidentiary basis for a reasonable jury to find" that the discharge was retaliatory. FED. R. CIV. PROC. 50 (a)(1),(2) and (b).[4]

We review the district court's grant of a new trial for abuse of discretion. Lambert v. Fulton County, Ga., 253 F.3d 588, 595 (11th Cir. 2001).  The district court should grant a motion for a new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (internal quotations and punctuation omitted).  Because it is critical that a judge does not merely substitute his judgment for that of the jury, "new trials should not be

---

[4]Here, Durango's motion at the close of evidence was denied; however, upon a proper renewal of the motion after the jury returned its verdict for Lipphardt, the district judge granted the motion.

granted on evidentiary grounds unless, at a minimum, the verdict is against the great--not merely the greater--weight of the evidence." Id.

B.    Judgment as a Matter of Law

In order to prevail on her retaliation claim, Lipphardt was required to "establish a prima facie case by showing (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action." Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993).  One example of "statutorily protected expression" is "oppos[ing] any practice made an unlawful employment practice" by Title VII, such as sexual harassment.  42 U.S.C. § 2000e-3(a).  The jury found that Lipphardt had established a prima facie case of retaliation because she was fired after she reported to management that Knuth's behavior constituted sexual harassment.

Lipphardt was not required to prove that Knuth's behavior legally constituted harassment in order to recover for retaliation.[5]  Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1058 (11th Cir.), cert. denied 528 U.S. 966, 120 S. Ct. 402 (1999) ("[t]he fact that the jury concluded that Sullivan's claims did not meet all the elements for a successful sexual harassment action does not mean that

---

[5]Therefore, it is irrelevant that the jury found for Durango on Lipphardt's hostile work environment sexual harassment claim.

7

it could not have found that the incident did take place and that Sullivan could have reasonably believed himself the victim of sexual harassment."). Instead, Lipphardt was required to show that a "good faith, reasonable belief" that she was the victim of hostile work environment sexual harassment led her to report Knuth's conduct to Durango's management. Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997). We have noted that:

> [i]t is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented.

Id. The belief must also be measured against substantive law at the time of the offense. Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999) (conduct must be "close enough to support an objectively reasonable belief that it is" sexual harassment). In order to prove hostile work environment sexual harassment, Lipphardt was required to prove, "among other things, that the harassment occurred because of her sex, and that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Id. (internal quotations omitted).

After Lipphardt established this prima facie case, Durango proffered the fact that Lipphardt was trading food for tanning services as the legitimate reason for her

8

discharge. The burden then shifted back to Lipphardt to prove "by a preponderance of the evidence that the reasons offered by the defendant are pretextual." Goldsmith, 996 F.2d at 1163. Lipphardt offered evidence that Durango had no proof of this allegation and that it was actually a different waitress who traded food for tanning services. Knuth testified that the general manager had asked him for information he could use to fire Lipphardt and that he told the general manager she was trading food for tanning services, even though he had no evidence that this was true. The jury accepted Lipphardt's explanation over Durango's, and found for Lipphardt on her claim of retaliation.

After trial, the district court granted Durango's motion for judgment as a matter of law because Lipphardt had "not demonstrated an objectively reasonable belief that the conduct complained of constituted harassment based on gender, or that the conduct [she] opposed was 'close enough' to support an objectively reasonable belief that it was sexual harassment." R4-167-7. The deciding factor for the district court was that "[t]he evidence at trial, when taken in the light most favorable to plaintiff, showed that the harassment was based squarely on plaintiff's status as Knuth's former lover and not on her status as a female." Id. Because the harassment was not based on gender, the district court found that Lipphardt's belief that she was the victim of unlawful discrimination was not objectively reasonable

9

when weighed against substantive law. Therefore, according to the district court, she failed to establish the prima facie case of retaliation, and the jury's verdict was due to be reversed as a matter of law.

We disagree. Lipphardt's personal relationship with Knuth was definitely a factor to be considered by the jury in its analysis of whether the discrimination was based on sex, as required by Title VII. However, the district court specifically charged the jury to consider this factor. The jury was charged that, "[p]ersonal animosity is not the same as sexual discrimination. Existence of a former personal relationship between the plaintiff and the alleged harasser is a factor you may consider in determining whether or not any alleged harassment was solely based on the plaintiff's gender." R12-205.[6] Therefore, because the jury was charged on this specific question, and subsequently returned a verdict for Lipphardt, it follows that the jury found that, despite the prior relationship, Lipphardt objectively believed that Knuth was harassing her based on her gender.

This is consistent with the law of our circuit. A review of our case law makes clear that, while a prior intimate relationship is an important factor to consider, it is not determinative of a sexual harassment claim. On appeal, Durango relies on Succar v. Dade County Sch. Bd., 229 F.3d 1343 (11th Cir. 2000) (per

---

[6] Neither party objected to the jury instructions.

10

curiam), where we found that the ex-lover's harassment of the plaintiff was based solely on a prior intimate relationship, and not on the plaintiff's gender. In Succar, plaintiff's ex-girlfriend verbally and physically harassed Succar in their workplace after their relationship ended. We found that Succar did not have a valid Title VII claim because the "harassment of Succar was motivated not by his male gender, but rather by Lorenz's contempt for Succar following their failed relationship; Succar's gender was merely coincidental." Id. at 1345.

In Succar, however, we were affirming the district court's grant of summary judgment on a hostile work environment sexual harassment claim. On a claim for retaliation, the standard is not whether there is a valid hostile work environment claim, but rather, whether Lipphardt had a good-faith reasonable belief that she was the victim of such harassment. Reasonable minds could disagree on this issue, which makes it an inappropriate candidate for judgment as a matter of law. The fact that Knuth and Lipphardt had a prior intimate relationship does not give Knuth a free pass to harass Lipphardt at work. And while we recognize that "[p]ersonal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII," McCollum v. Bolger, 794 F.2d 602, 610 (11th Cir. 1986), there is a point where inappropriate behavior crosses the line into Title VII harassment. Here, the jury decided that Lipphardt could reasonably believe that Knuth had crossed that

11

line, and it is not within the purview of the courts to take that decision away from the jury.

It is also important that Knuth's conduct towards Lipphardt was sexual in nature, while the harassment that Succar suffered was not. "When a person 'sexually harasses' another, i.e., makes comments or advances of an erotic or sexual nature, we infer that the harasser is making advances towards the victim because the victim is a member of the gender the harasser prefers." Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1246 (11th Cir. 1998) (internal citations and punctuation omitted). Lipphardt introduced evidence that Knuth was soliciting her to reinstate their intimate relationship while she was at work, and that on several occasions he brushed up against her in an inappropriate way while at work. This is sufficient to raise a factual question of whether Lipphardt had an objective belief that she was the victim of harassment, because, "[u]nless there is evidence to the contrary, . . ., we also infer that the harasser treats members of the 'non-preferred' gender differently–and thus that the harasser harbors an impermissible discriminatory animus towards persons of the preferred gender." Id.

When "there is . . . evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions [for judgment as a matter of law] should be denied."

12

<u>Watts</u>, 842 F.2d at 309. Therefore, the district judge improperly granted judgment as a matter of law for Durango after the jury returned its verdict for Lipphardt on retaliation.

C.      <u>New Trial</u>

In accordance with Rule 50(c)(1), the district court simultaneously ruled on Durango's motion for a new trial. The district court order refers back to the reasons that it granted judgment as a matter of law to support the decision that the jury verdict was against the great weight of the evidence and, therefore, that a new trial should be granted in the event that we reinstated the jury verdict. R4-167-8-9. We reverse this decision as well, as the jury's verdict did not result in a miscarriage of justice and was not against the great weight of the evidence. There was ample evidence presented that Durango's proffered reason for firing Lipphardt was pretextual, and that she was fired in response to her complaints about the way that Knuth was treating her at work. This is the evidence that the jury found credible, and it is consistent with our case law. Therefore, the district court's order conditionally granting a new trial constituted an abuse of its discretion.

## III. CONCLUSION

Following the clear instructions it was given, the jury returned a verdict recognizing Lipphardt's belief that she was the victim of harassment as objective.

13

This decision was not improper as a matter of law, as a prior intimate relationship, while important, is not a determinative factor in a sexual harassment analysis. Therefore, we REVERSE the district court's order granting Durango judgment as a matter of law on Lipphardt's claim of retaliation. We also REVERSE the district court's decision to grant Durango a new trial. We REMAND for the district court to enter judgment for Lipphardt and award damages as decided by the jury.