[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 5, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14441
Non-Argument Calendar
_____

D. C. Docket No. 01-02038-CV-2-RDP

BARRY W. TUCKER,

Plaintiff-Appellee,

versus

HOUSING AUTHORITY OF THE BIRMINGHAM DISTRICT,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 5, 2007)**

Before TJOFLAT, ANDERSON and BARKETT, Circuit Judges.

PER CURIAM:

This is a discrimination in employment case brought pursuant to Title VII of

the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e-2(m) and 2000e-3.  Barry W. Tucker claims that the Housing Authority of the Birmingham District ("HABD") discriminated against him on account of his race, white, on two occasions: when it discharged him from his position as assistant general counsel and when, in retaliation for his prosecution of this case, it chose not to rehire him for a vacant attorney position after he had filed this law suit.  After the district court denied HABD's motion for judgment as a matter of law, the jury found for Tucker on both claims, awarding him $93,990 for lost wages and benefits and $100,000 in mental-anguish damages.  The district court denied HABD's renewed motion for judgment as a matter of law and for new trial or, in the alternative, for a remittitur.  HABD now appeals these rulings.  We affirm.

The evidence at trial established that Tucker was employed at HABD as an assistant general counsel, under the direct supervision of the general counsel, Naomi Truman, a black female.  During the course of his employment, Tucker and Truman had several disputes over the office's leave and absence policies.  In her annual budget proposal submitted to HABD's executive director, Ralph Ruggs, in March 2000, Truman suggested that HABD eliminate one of two assistant general counsel positions, and replace that position with two paralegals.  Ruggs  ratified

2

the budget, and Tucker, the assistant general counsel with less seniority, lost his job. Tucker then brought this law suit. After Tucker filed his complaint, the remaining assistant general counsel, Faye Rosenbaum, resigned, and he applied for the vacant position. He received no response from HABD about the vacancy for several months, so he amended his complaint to add the retaliation claim mentioned above. HABD eventually interviewed Tucker for the assistant general counsel position, but notified him, after the interview, that the position would not be filled. Ruggs, at the advice of Truman, withdrew the position because the general counsel's office was working efficiently with two paralegals and two temporary attorneys who were hired to replace Rosenbaum. HABD later hired an "associate counsel" at the same pay grade and with a nearly identical job description as "assistant general counsel." With these facts in hand, we consider first HABD's argument that the district court erred in denying HABD's motion for judgment as a matter of law, then its arguments that the court abused its discretion in denying its motion for new trial or, alternatively, a remittitur.

**Judgment as a Matter of Law**

We consider <u>de novo</u> a district court's decision denying a motion for judgment as a matter of law and, in doing so, apply the same legal standard as the district court. <u>Ledbetter v. Goodyear Tire and Rubber Co., Inc.</u>, 421 F.3d 1169,

1177 (11th Cir. 2005), cert. granted, 126 S.Ct. 2965 (2006). As that standard dictates, judgment as a matter of law is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). We review "the entire record, examining all evidence, by whomever presented, in the light most favorable to the nonmoving party, and drawing all reasonable inferences in the nonmovant's favor," we "will reverse the denial of judgment as a matter of law only if the facts and inferences point overwhelmingly in favor of the movant, such that reasonable people could not arrive at a contrary verdict." Ledbetter, 421 F.3d at 1177 (internal quotation omitted). The denial of judgment as a matter of law will be upheld so long as "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002).

**Discrimination claim**

HABD argues that Tucker failed to prove that it intentionally discriminated against him and that the court erred in finding that he presented "sufficient doubt on the HABD's proffered legitimate, nondiscriminatory reasons for its employment actions, such that a jury reasonably could conclude that the proffered reasons were not what actually motivated the HABD's conduct." HABD asserts

4

that because Ruggs was the decision-maker, "it was essential for Tucker to present evidence of Ruggs' own racial or gender discriminatory animus to show that the real reason motivating the decision to eliminate an assistant general counsel position was discriminatory," and that the court erred by concluding that Ruggs was a mere conduit for the discriminatory animus attributable to Truman.

Congress has dictated that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). After "the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection . . . the inquiry should focus on the ultimate question of whether the defendant intentionally discriminated against the plaintiff." Collado v. United Parcel Service, Co., 419 F.3d 1143, 1150-51 (11th Cir. 2005) (internal quotations omitted). This means that once the defendant puts forth its case, we abandon the burden shifting framework derived from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and "the case is placed back into the traditional framework – in other words, the plaintiff still bears the burden of proving, more probably than not, that the employer took an

5

adverse employment action against him on the basis of a protected personal characteristic." Collado, 419 F.3d at 1150-51 (internal quotation omitted).

We have recognized that the "'cat's paw theory" may be utilized by the plaintiff to prove "that the discriminatory animus behind the recommendation caused the discharge . . . if the plaintiff shows that the decision maker followed the biased recommendation without independently investigating" the recommendation. Stimpson v. City of Tuscaloosa, 186 F.3d 1328, 1332 (11th Cir. 1999). "In such a case, the recommender is using the decision maker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus." Id. Essentially, where the individual accused of discriminatory animus is "an integral part" of a multi-level personnel decision, their improper motivation may "taint[ ] the entire . . . process." Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999).

A plaintiff must also provide sufficient evidence that the decision-maker was motivated by discriminatory animus "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981). Where "the defendant has proffered nondiscriminatory

reasons for its actions," the district court, in ruling on a motion for judgment as a matter of law, "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." Combs, 106 F.3d at 1538. "Whether judgment of a matter of law is appropriate in any particular case will depend on a number of factors," including "the strength of the plaintiff's prima facie case, [and] the probative value of the proof that the employer's explanation is false. . . ." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148-49, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

After reviewing the trial transcript, we conclude that a reasonable jury could find that Ruggs was a conduit by which Truman made an employment decision motivated by her discriminatory animus. A reasonable jury could find that, although Ruggs made the ultimate decision to approve the budget plan eliminating an attorney position, he was merely endorsing Truman's recommendation. Uncontroverted testimony indicated that Truman proposed the reorganization of the legal department, and Truman admitted that at the time she proposed the reorganization to Ruggs, she was aware that department policy dictated that positions be eliminated on the basis of seniority and that Tucker was the less senior

7

of the two assistant general counsels. The record also contains evidence that Truman generally controlled the personnel decisions in her office. She testified that Ruggs regularly approved her requested personnel decisions, including, when, after Rosenbaum resigned and the office was using temporary attorneys, Ruggs chose not to hire a permanent employee based on Truman's recommendation that the department was running efficiently.

A reasonable jury could also find that Truman was motivated by racial animus when she issued the budget proposal calling for the elimination of Tucker's position and that the alternative explanations given by HABD, cost-savings and efficiency, were "not what actually motivated its conduct." Combs, 106 F.3d at 1538. Tucker testified that he felt he was scrutinized more closely by Truman because of his race, and that in one instance, she called him a racist, which he felt was derogatory. Other witnesses testified to comments Truman made that could be taken as evincing racial animus. Truman was critical of the friendship between an African-American paralegal, and Rosenbaum, who is white, asking the paralegal, why she had "so much in common with white people," and telling her that she "was the only black that [Rosenbaum] talks to." Rosenbaum felt that Truman considered the office as being divided along racial lines when Truman told her that "she was on to [Tucker] and I and she knew that we were teamed up against her. . .

." Not only could a jury have found that Truman possessed a racial animus, it could also find that the reasons HABD provided for eliminating Tucker's position did not motivate the decision. Truman did not conduct a financial analysis of her budget proposal, and Ruggs, the executive director who approved the budget, could not explain how the reorganization saved HABD any money. Truman had consistently asked for measures that would enable the office to run more efficiently, but was willing to staff an office of rotating paralegals and temporary attorneys in lieu of Tucker. In addition, Tucker was not offered a position as a paralegal after his position was cut from the budget, even though the parties stipulated that he was eligible for rehire.

**Retaliation claim**

HABD argues that Tucker failed to show that he suffered an adverse employment action, because nobody was hired to fill the vacant assistant general counsel position, and failed to provide evidence that discredited HABD's articulated reason for not rehiring him, which was that the office worked efficiently with the temporary attorneys. Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . applicant for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

9

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To satisfy his burden of proof, "a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events." Shannon v. Bellsouth Telecommunications, Inc., 292 F.3d 712, 715 (11th Cir. 2002) (internal quotation omitted). Should a plaintiff meet that three-part assessment, the employer is afforded the opportunity "to produce legitimate reasons for the adverse employment action," however, the burden remains with the plaintiff to prove by a preponderance of the evidence that the offered reasons were pretext. Id. In retaliation cases, "an employer can avoid liability if it can prove that it would have made the same disputed employment decision in the absence of the alleged bias." Pennington v. City of Huntsville, 261 F.3d 1262, 1269 (11th Cir. 2001).

Neither party challenges the notion that Tucker engaged in a statutorily protected expression by filing his discrimination claim; therefore, the question becomes whether HABD engaged in an adverse employment action and, if so, whether his discrimination claim was the cause of such action.

An adverse employment action "must either be an ultimate employment decision or else must meet some threshold level of substantiality." Stavropoulos v.

10

Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004) (internal quotation omitted).  We have noted that failure to hire an individual is an example of an ultimate employment decision.  Id. at 617.  A causal connection between the protected activity and the adverse employment action can be proven by presenting evidence that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated."  Shannon, 292 F.3d at 716 (internal quotation omitted).  It is essential that the plaintiff prove that the "person taking the adverse action was aware of the protected expression." Bass v. Board of County Com'rs, Orange County, Fla., 256 F.3d 1095, 1119 (11th Cir. 2001). Circumstantial evidence, such as a "[c]lose temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated."  Id.

The jury had sufficient evidence before it on which to find that Tucker suffered an adverse employment action as a result of filing his racial discrimination lawsuit. While HABD did not hire an "assistant general counsel" to replace Rosenbaum, it did later hire an "associate counsel," whose job description was essentially the same as that of assistant general counsel, at the same salary grade. Moreover, Tucker was interviewed by a four person panel, three of whom knew about the lawsuit.  Ruggs testified that the panel recommended that another

11

individual be hired because Tucker was unresponsive in his interview; however, other evidence indicated that the questioning was hostile and regarded the lawsuit. A jury could reasonably find that HABD refused to rehire Tucker because of the protected activity in which he was engaging; hence, the district court properly denied HABD's motion for judgment as a matter.

**Motion for New Trial**

HABD argues that the district court abused its discretion in refusing to grant it a new trial due to an evidentiary error. It asserts that the court improperly allowed the jury to consider a pre-trial, partial motion to dismiss in which it submitted that Tucker "should not be able to simultaneously seek reinstatement as a remedy and apply for open positions with the HABD," and requested an order "[d]irecting submission of [Tucker] to withdraw his application for employment thus submitting his reinstatement claim to the [c]ourt pending the verdict of the jury, vesting all authority over plaintiff's reinstatement in the [c]ourt." HABD contends that this challenged evidence was extremely prejudicial because the motion represented the only evidence of its retaliatory intent.

The denial of a motion for new trial by the district court is reviewed for abuse of discretion. Lipphardt v. Durango Steakhouse, 267 F.3d 1183, 1186 (11th Cir. 2001). A district court may grant a new trial "for any of the reasons for which

12

new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great–not merely the greater–weight of the evidence." Lipphardt, 267 F.3d at 1186 (internal quotation omitted).

The Federal Rules of Evidence declare that "[a] statement is not hearsay if the statement is offered against a party and is the party's own statement, in either an individual or a representative capacity. . ." Fed. R. Evid. 801(d)(2)(A). The Rules define a "statement" as "an oral or written assertion . . . if it is intended by the person as an assertion," and note that "[i]t can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion." Fed. R. Evid. 801(a), and advisory committee's note. A statement made in a brief filed by a party may be considered as an admission of fact. Young & Vann Supply Co. v. Gulf, Florida & Alabama Railway Co., 5 F.2d 421, 423 (5th Cir. 1925). Absent necessary exceptions for inconsistent pleas and complicated joinder scenarios, "[a]s a general rule the pleading of a party made in another action, as well as pleading in the same action which have been superseded by amendment, withdrawn or dismissed, are admissible as admissions of the pleading party to the

13

facts alleged therein." Cont'l Ins. Co. of New York v. Sherman, 439 F.2d 1294, 1298 (5th Cir. 1971). The Second Circuit, expanding on that concept, has ruled that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." Purgess v. Sharrock, 33 F.3d 134, 144 (2nd Cir. 1994).

Because the partial motion to dismiss was an admission made by HABD's attorneys prior to trial, the district court did not abuse its discretion in admitting the evidence and thereafter in denying HABD a new trial.

**Motion for Remittitur or for a New Trial on the Issue of Damages**

HABD argues that the mental anguish damages awarded by the jury were not supported by the evidence; accordingly, the court should have ordered a remittitur or a new trial on the issue of damages.

A district court's denial of a motion for remittitur or a new trial on the issue of damages is reviewed for "a clear abuse of discretion." Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1249 (11th Cir. 2001). An award of damages that has been reviewed and upheld by the trial judge is entitled to a presumption of validity. Ferrill v. The Parker Group, Inc., 168 F.3d 468, 476 (11th Cir. 1999).

We are "particularly deferential to the fact finder's determination of compensatory damage awards for intangible, emotional harms because the harm is

14

so subjective and evaluating it depends considerably on the demeanor of the witnesses." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1315 (11th Cir. 2001) (internal quotation omitted). Unlike special damages, however, general compensatory damages "need not be proven with a high degree of specificity" and "may be inferred from the circumstances as well as proved by the testimony." Akouri v. Florida Dep't of Transportation, 408 F.3d at 1345. "A plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation," but "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulate; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages." Id.

At trial, Tucker relied solely on his own testimony to prove emotional damages. His testimony amounted to sufficiently articulated episodes of emotional distress from which a jury could award compensatory damages. Tucker testified that his relationship with his family suffered because of depression and anxiety. He felt humiliated having to explain his unemployment to a neighbor who noticed that his car was at home more frequently than usual. To avoid alarming his young daughter, he would pretend to go to work. He also told the jury of physical effects,

15

such as digestive problems and an inability to sleep. Given the evidence before the

jury, we would be hard pressed to hold that the court abused its discretion in

refusing to grant a new trial or order a remittitur.

AFFIRMED.