[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16184
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 29, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-81566-CV-WPD

FAIR HOUSING CENTER OF
THE GREATER PALM BEACHES, INC.,

Plaintiff-Appellant,

versus

THE SHUTTERS CONDOMINIUM
ASSOCIATION, INC.,
CAROL RAVANTTI LALLA,
and,
MILDRED MINER,

Defendants-Appellees,

TERESA B. SALTER,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 29, 2010)

Before CARNES, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

The Fair Housing Center of the Greater Palm Beaches appeals the denial of its motion for a new trial and for judgment as a matter of law. Fed. R. Civ. 59(a), 50(b). The Center complained that The Shutters Condominium Association and Mildred Miner had violated two provisions of the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(c), but at trial the jury returned a verdict in favor of The Shutters Association and Miner. The district court denied the post-trial motions of the Center on the ground that the jury was entitled to discredit testimony that the Center had been damaged by the activities of The Shutters Association and Miner. Because the record supports the jury's verdict, we affirm.

In November 2006, one of three employees at the Center, a non-profit organization working to eliminate discrimination in access to housing in the Greater Palm Beaches area of Florida, discovered on the "craigslist" website an advertisement offering for rent a condominium in The Shutters complex. The advertisement included the statement, "Sorry no kids or pets." The Center later learned that Miner owned the condominium and the advertisement had been posted on the Internet on November 7, 2006, by Miner's daughter, Teresa Salter.

The Center obtained over the Internet copies of an amendment to the

2

Declaration of Condominium recorded in 1986 by The Shutters Association that contained two provisions restricting residency by children. Section F of Article XI stated, "Age limit of children permitted with parents as owners, 18 years of age." Section G of Article XI permitted the rental of "entire apartments" to "one family consisting of the father, mother and adult children, if any" and also stated there could be "no children."

The Center concluded that the advertisement and restrictions in the Declaration violated the Fair Housing Act, which was revised in 1988 to prohibit discrimination in access to housing based on "familial status," 42 U.S.C. § 3602(k). The Center filed charges with Housing and Urban Development and the Palm Beach Office of Equal Opportunity about discrimination based on familial status by The Shutters Association, its president, Carol Ravantti Lalla, Miner, and Salter. The Center offered to settle the charges if, among other conditions, members of The Shutters Association would complete an education program that cost $5000 per participant, but the dispute was not resolved. On May 8, 2007, the Office of Equal Opportunity found reasonable grounds that the defendants had violated the Fair Housing Act.

In August 2008, the Center filed an amended complaint that The Shutters Association, Ravantti Lalla, Miner, and Salter had violated the Fair Housing Act in

3

four ways: making housing unavailable to potential lessees because of their familial status, 42 U.S.C. § 3604(a); discriminating in the sale or rental of housing because of potential lessees' familial status, id. § 3604(b); advertising in a manner that discriminates against potential lessees based on their familial status, id. § 3604(c); and interfering "in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604," id. § 3617. The Center complained that it "[had] and continue[d] to spend substantial time and resources concerning The Shutters Complaint which [had] impaired its mission to insure that the Greater Palm Beaches is free from discriminatory housing practices," and the Center listed four injuries it had suffered because of the defendants' alleged discrimination. Before trial, the district court dismissed without prejudice the complaint against Salter. The Shutters Association later amended its Declaration and removed all language about prohibiting the rental and sale of its condominium units to families with children.

In July 2009, the Center, The Shutters Association, and Ravantti Lalla moved for summary judgment. The district court denied the motion of the Center, but granted in part the motion of The Shutters Association and Ravantti Lalla. The district court found that the Center had failed to "put forth any evidence that The Shutters" Association or Ravantti Lalla had "discriminate[d] against any person"

about the "sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of . . . familial status," 42 U.S.C. § 3604(b), and dismissed that ground of the complaint. The district court rejected the argument that the Center lacked standing based, in part, on the declaration of the Vice President of the Center, Bobbie Fletcher, that "as a result of The Shutters' alleged discrimination, [the Center] began to divert its resources from other activities in order to 'identify and counteract Defendants' unlawful housing practices.'" The district court also found that there was a factual dispute about whether Miner had published her discriminatory advertisement because of the amended Declaration recorded by The Shutters Association in 1986. See 42 U.S.C. §§ 3604(a), 3604(c), 3617.

At trial, the Center presented testimony from Fletcher about the activities of the Center and its damages. The Center also called Miner to testify about the advertisement her daughter had posted on the craigslist website. After the Center rested its case, The Shutters Association and Ravantti Lalla moved for judgment as a matter of law. See Fed. R. Civ. P. 50(a). Miner also moved for judgment in her favor. The district court entered judgment in favor of Ravantti Lalla, but the district court denied the motions of The Shutters Association and Miner.

A jury returned verdicts in favor of The Shutters Association and Miner.

5

The jury found that neither defendant had made housing unavailable to potential lessees because of their familial status, 42 U.S.C. § 3604(a); advertised or caused the advertising of housing that indicated a limitation or discrimination based on familial status, id. § 3604(c); or interfered "in the exercise or enjoyment of . . . any right granted or protected by section . . . 3604," id. § 3617. The district court entered judgment in favor of The Shutters Association and Miner.

The Center moved for a new trial, Fed. R. Civ. P. 59(a), and for judgment as a matter of law, Fed. R. Civ. P. 50(b), on the ground that the verdicts under sections 3604(a) and (c) were contrary to the weight of the evidence, but the district court denied the motions. The district court found that the jury was entitled to reject the testimony of Fletcher about the damages incurred by the Center:

> The jury was entitled to reject the testimony of Bobby Ann Fletcher as to the existence of damages and as to any causal connection between the defendants' activities and the alleged damages. It was within the jury's province to weigh the credibility of witnesses, particularly those who were demanding high fees for lengthy "educational" seminars as a condition of a settlement.

The district court also expressed its "agree[ment] with the jury's verdict" and ruled that, "even if [the Center] had made a Rule 50 motion, this Court would have exercised discretion and denied the request for judgment as a matter of law."

Our scope of review in this appeal is narrow: We review the denial of a motion for a new trial to determine "whether there was an absolute absence of

6

evidence to support the jury's verdict." Wilson v. Attaway, 757 F.2d 1227, 1237 n.3 (11th Cir. 1985) (internal quotation marks omitted). Because we may not examine "[t]he sufficiency of the evidence supporting a jury verdict" in the absence of a timely motion for judgment as a matter of law by the Center, "our inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a 'manifest miscarriage of justice.'" Id. at 1237. In our review, we may not disturb any possible findings of the jury about conflicts and inferences to be drawn from the evidence or the credibility of witnesses. See Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001).

The Center challenges one of the three verdicts rendered by the jury; the Center challenges the decision that it was not injured by the publication of an advertisement by Miner about rules of The Shutters Association that discriminated against potential lessees based on their familial status, 42 U.S.C. § 3604(c). The Center does not challenge the decision that neither defendant had made unavailable housing based on a person's familial status, id. § 3604(a). "[O]ur well established rule is that issues and contentions not timely raised in the briefs are deemed abandoned." United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001).

7

We cannot conclude as a matter of law that there is no evidence to support the jury's verdict. The jury may have concluded that the Center failed to establish a causal connection between its alleged damages and the discriminatory advertising by Miner. See Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co., 236 F.3d 629, 639 (11th Cir. 2000). The Center complained about injuries it suffered as a result of the advertisement, but the Center offered scant evidence about its damages.

Although the Center complained that the advertisement "interfered with [its] efforts and programs" and resulted in the "devot[ion of] scarce resources to identify and counteract Defendants' unlawful housing practices and . . . diver[sion of] those same resources from its education, counseling, and referral services," the testimony did not wholly support that complaint. Bobbie Fletcher testified that the Center incurred $15,000 in "out-of-pocket expenses" while "monitor[ing] each month" whether The Shutters Association had amended its Declaration, but Fletcher did not testify whether or how the purported expenditure interfered with or diverted resources from programs offered by the Center. Furthermore, the jury might not have found Fletcher's testimony credible. According to Fletcher, the Center monitored the Declaration over the Internet for about 20 months, and a jury reasonably could have found it incredible the monitoring cost $750 a month. Fletcher testified that the Center maintained "a precise time report as to the time

8

spent" totaling the $15,000, but the Center did not introduce the report into evidence. Fletcher also gave inconsistent statements about when the Center incurred the expenses. Fletcher first testified that the Center incurred its expenses "from the time [it] discovered" the advertisement, but Fletcher later testified that "[a]t the time [the Center] filed the complaint there was no money involved."

The testimony also did not support the complaint of the Center that the discriminatory advertising "interfered with the rights of Plaintiff Fair Housing Center's constituents" and "frustrated" the Center's "mission." Fletcher admitted that "no one was turned away" as a result of the advertisement nor was she aware that anyone had even "showed an interest in the apartment." Likewise, Miner testified that "[n]ot one person" responded to her advertisement about her condominium, even after she removed the "no children" language in the advertisement.

We **AFFIRM** the denial of the Center's motion for a new trial and for judgment as a matter of law.

9