[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 23, 2011
JOHN LEY
CLERK

No. 10-11677
Non-Argument Calendar

_____

D.C. Docket No. 0:09-cv-60169-CMA

LONNIE D. BAKER,

Plaintiff - Appellant,

versus

JONATHAN WELKER,
IAN SKLAR,
CITY OF FORT LAUDERDALE, FLORIDA,

Defendants - Appellees,

PAUL FORTUNATO, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 23, 2011)

Before EDMONDSON, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Lonnie Baker appeals the district court's denial of his motions for summary judgment, judgment as a matter of law, judgment notwithstanding the verdict, a new trial, and for discovery sanctions in his section 1983 suit against Jonathan Welker and Ian Sklar, officers in the City of Fort Lauderdale police department.[1]  No reversible error has been shown; we affirm.

Plaintiff fled from Plantation Police Department officers after a traffic stop. The Plantation Police Department radioed the Fort Lauderdale Police Department for assistance.  The Plantation Police Department advised that Plaintiff was wanted for a probation violation and for fleeing from an officer.  The assistance of K-9 police officers Welker and Sklar was requested to capture Plaintiff.  Welker and Sklar were warned to use caution: Plaintiff's criminal record indicated he had been charged with violent crimes, some of which involved the use of weapons.

Plantation Police Department officers directed officers Sklar and Welker, together with Welker's K-9, to search a fenced warehouse facility.  The officers spotted Plaintiff in a well-lit area walking close to the wall and looking back over his shoulder.  Welker identified himself as a K-9 handler and told Plaintiff to get

---

[1]Plaintiff also brought claims against the City of Fort Lauderdale but does not pursue those claims on appeal.

to the ground.  Plaintiff raised his hands and arms up but failed to get down on the ground as commanded.[2]  Plaintiff acted very suspicious and nervous; his eyes darted around almost as though he was looking for a way to run and hide.  Again Plaintiff failed to respond to commands to get to the ground.  Officer Sklar moved in to handcuff Plaintiff; Welker warned Plaintiff to follow Sklar's commands or he would use the dog to apprehend him.  As Sklar approached to handcuff Plaintiff, Plaintiff "bodychecked" Sklar sending Sklar to the ground.  Welker again ordered Plaintiff to the ground, but Plaintiff failed to comply.  Concerned that Plaintiff might continue his attack on Sklar or attempt to flee, Welker deployed the dog to apprehend Plaintiff.

The dog seized Plaintiff's leg.  Plaintiff grabbed the dog's muzzle and tried to pry his jaws open.  Welker ordered Plaintiff to stop and to put his hands behind his back.  When Plaintiff continued, Welker kicked his hands away from the dog.  Plaintiff finally ceased resistance; and Sklar, who had not seen the dog's interaction with Plaintiff, was back on his feet and moved in to handcuff Plaintiff.  Simultaneously with the handcuffing, the dog was called off Plaintiff.

Officers Sklar and Welker have somewhat different recollections of Plaintiff's arrest.  Officer Sklar described the bite-and-hold as "long enough for

---

[2]No weapon was visible to the officers, but Plaintiff then was unsearched and unsecured.

me to get up and go over and handcuff him, so a few seconds, maybe. Not very long." Officer Welker, when forced to approximate how long the use of force lasted guessed "[l]ess than a minute and a half, two minutes," although he later explained his time approximation included the entire incident involving Plaintiff's apprehension.

Plaintiff moved for summary judgment.[3] According to Plaintiff, even if you accept Welker and Sklar's version of the incident, setting the dog upon Plaintiff and causing or allowing the dog to inflict the bite wounds on Plaintiff was without justification and violated Plaintiff's Fourth Amendment constitutional rights as a matter of law. The district court rejected correctly Plaintiff's claimed entitlement to summary judgment: notwithstanding Plaintiff's injuries, ample evidence in the record would support a jury verdict finding that the use of force was justified and constituted no constitutional violation.[4]

Plaintiff failed to include a transcript of the trial proceedings in the record on appeal even though he challenges the sufficiency of the evidence to support the

---

[3]Officers Sklar and Welker made no motion for summary judgment on Plaintiff's excessive force claims.

[4]Plaintiff's motion for judgment as a matter of law at the close of evidence at trial also was denied correctly: a party is entitled to judgment as a matter of law only when no legally sufficient evidentiary basis exists for a reasonable jury to find for the opposing party on that issue. See Fed.R.Civ.P. 50.

4

jury verdict. The federal rules of appellate procedure provide: "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion." Fed.R.App.P. 10(b)(2). Plaintiff argues that the record is sufficient for review because the trial testimony was consistent with the depositions in the record. Even if we were to accept this contention -- which we do not -- Plaintiff's post-judgment motions were due to be denied.

Plaintiff's renewed motion after the jury verdict for judgment as a matter of law focuses on inconsistencies between the testimonies of Welker and Sklar. Based on those inconsistencies, Plaintiff maintains "both officers were complicit in perjury and together, their conflicting testimony amounted to no competent evidence about the core facts of the case." Trials allow a full airing of differing accounts of a chaotic event. Impeachment allows a party to highlight inconsistencies within a witness's testimony and inconsistencies between a witness's testimony and that of other witnesses. The task then falls to the jury to sort through all the testimony to determine the facts. The jury in the instant case found the officers's testimonies -- subject as they were to some inconsistency -- more credible than Plaintiff's recounting of the circumstances surrounding his

5

arrest. We fail to see how the inconsistencies in Sklar's and Welker's testimonies reduced their accounts to no evidentiary value. Baker's motion before the district court and his argument on appeal advance his version of the facts and his subjective opinions; this version of the facts -- together with Plaintiff's subjective opinions -- were rejected by the jury. Plaintiff fails to show that the evidence was so overwhelmingly in his favor that no reasonable jury could find otherwise.[5]

Plaintiff also claims the district court committed reversible error when it failed to impose sanctions when the attorney for the City of Ft. Lauderdale terminated the Rule 30(b)(6) deposition, Fed.R.Civ.P. 30(b)(6), of the City of Fort Lauderdale's designated representative. No motion for leave to terminate the deposition, as required by Fed.R.Civ.P. 30(d)(3)(A) was filed. According to Plaintiff, the termination of the deposition and the refusal to file a motion to have the termination ratified by the district court was an intentional and contemptuous violation of the federal rules.

---

[5]Plaintiff's motion for a new trial also was due to be denied. Plaintiff bases his entitlement to a new trial essentially on the same grounds he argues supported his renewed motion for judgment as a matter of law: inadequacies in the evidence supporting the jury verdict. As we have already explained, Plaintiff fails to show that the jury verdict is contrary to the great weight of evidence at trial. "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence." Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir.2001) (citation and internal quotation marks omitted ).

District courts enjoy broad discretion over the management of discovery. See Johnson v. Board of Regents of University of Georgia, 263 F.3d 1234, 1269 (11ᵗʰ Cir. 2001). And a district court's resolution of a Rule 37 request for sanctions is entitled to great deference on appeal. See Mutual Service Ins. v. Frit Industries, Inc., 358 F.3d 1312, 1326 (11ᵗʰ Cir. 2004). We review a decision on the imposition of sanctions under Rule 37 for abuse of discretion. See Phipps v. Blakeney, 8 F.3d 788, 790 (11ᵗʰ Cir. 1993).

In its order denying Plaintiff's request for sanctions, the district court explained that the termination was provoked by "Plaintiff's counsel's actions in lifting himself out of his chair, leaning his head forward, and screaming at the top of his lungs to defense counsel, 'Stop talking now!'" In lieu of imposing sanctions, the district court reminded counsel for both parties of their obligations as members of the Florida Bar and cautioned that future non-professional conduct would be met with severe sanctions. Plaintiff fails to show that this tempered resolution constitutes an abuse of discretion.

We have considered all arguments advanced by Plaintiff; no reversible error has been shown.

AFFIRMED.

7