[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT. 28, 2001
THOMAS K. KAHN
CLERK

No. 01-11736
Non-Argument Calendar

_____

D.C. No. 99-02574-CV-T-26

HARLE L. PIPKINS
n.k.a.
Harle L. Houldsworth,

                                                    Plaintiff-Appellant,

Versus

CITY OF TEMPLE TERRACE, FLORIDA,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 28, 2001)**

Before TJOFLAT, BLACK and KRAVITCH, Circuit Judges.

KRAVITCH, Circuit Judge:

    Harle Houldsworth filed claims against the City of Temple Terrace, Florida

(the "City") for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*, in the United States District Court for the Middle District of Florida. She now appeals the grant of summary judgment in favor of the City on these claims.[1]

## I. Background

Houldsworth began her employment with the City in November 1987. Her tenure there continued through January 1996. From approximately June 1993 until May 1994, Houldsworth maintained an on-again, off-again personal relationship with Daniel Klein, City Finance Director and Assistant City Manager. Although Klein held a supervisory position within Houldsworth's department, Houldsworth's immediate overseer was Florence Lewis-Begin, Assistant Finance Director. After May 1994, Houldsworth and Klein ceased to have a sexual relationship. Houldsworth asserts, however, that Klein continued to pursue her romantically even subsequent to this date.

According to Houldsworth, she received exemplary job evaluations through

---

[1]Houldsworth also brought sex discrimination and retaliation claims under the Florida Civil Rights Act of 1992, Fla. Stat. ch. 760.01-760.11 (1992). These state law claims were dismissed by the district court on the City's motion by order dated May 3, 2000. That order is not here appealed.

2

October 1994, at which point her scores began to suffer.[2]  Believing her low October evaluation to be somehow connected to the termination of her relationship with Klein, Houldsworth claims that in November or early December 1994 she confronted the City's Human Relations Specialist with her concerns.  Houldsworth contends that later in December 1994, the City Manager overheard a conversation between herself and Klein indicating the personal nature of their former relationship.  The City Manager proceeded to conduct an investigation into the matter.  Upon the investigation's conclusion, Klein was notified that he should immediately commence seeking alternate employment.  Klein left the City's employ in June 1995.

Houldsworth asserts that after her relationship with Klein came to light in December 1994 her job evaluations continued to deteriorate.  She scored lower on her May 1995 evaluation than she had on previous ones, and worse yet on her October 1995 evaluation.  As a result, Houldsworth tendered her resignation on January 2, 1996, approximately six months after Klein's termination had become effective, and now claims constructive discharge.

_____

[2]The City maintains a pay raise policy whereby an employee's salary increases are directly and negatively impacted by poor evaluations.

## II. Discussion

We review *de novo* a district court's grant of summary judgment, applying the same legal standards that controlled the district court's decision. See Shannon v. Jack Eckerd Corp., 113 F.3d 208, 210 (11th Cir. 1997). We construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party. See Wideman v. Wal-Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir. 1998).

Houldsworth asserted a quid pro quo sexual harassment claim. To establish a prima facie case, a plaintiff must show: (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable. See Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000) (applying test from Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

Focusing on the statutory language of Title VII, see 42 U.S.C. §2000(e)-(2)(a)(1), the Supreme Court has, in recent years, begun to place renewed emphasis on what it means to be discriminated against "because of... sex." See Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80-81 (1998) (holding that sex

4

discrimination consisting of same-sex sexual harassment is actionable under Title VII and stressing that "[t]he critical issue... is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed" (quoting Harris v. Forklift Syst., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). In light of Oncale, we are not persuaded that Houldsworth could meet the third prong of the Mendoza test, i.e. she cannot establish that the harassment complained of was committed by reason of her sex.

Applying Oncale, this court has distinguished between actions based on discriminatory animus and those based on personal animosity resulting from failed consensual relationships. See Succar v. Dade County Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000). Succar involved a hostile work environment claim. Houldsworth, on the other hand relies on the term quid pro quo in arguing her sexual harassment claim. Such a quintessential violation of Title VII occurs when a supervisor demands plaintiff's acquiescence to sexual overtures in exchange for a tangible job benefit. See Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1552 (11th Cir. 1997). Neither the Supreme Court nor this court, however, continues to employ a bright line distinction between the two kinds of claims.[3] See Johnson, 234

[3]Generally, sexual harassment claims are argued as either hostile work environment claims or quid pro quo claims. The difference between the two is that the former do not result in tangible employment actions, while the latter do. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 760-763 (1998). Although the elements for a prima facie case for these two kinds of claims

5

F.3d at 508 n.7; c.f. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 751-54 (1998). Therefore, we now extend the rule for hostile work environment claims arising out of consensual relationships, established in <u>Succar</u>, to claims arising out of consensual relationships in the <u>quid pro quo</u> context.

Applying this rule to the case at hand, we find the consensual nature of the relationship between Houldsworth and Klein and any resulting feelings of enmity determinative. Most of the actions of which Houldsworth complains were committed by her immediate supervisor, Lewis-Begin, rather than by Klein. Houldsworth claims, despite offering no evidence in this regard, that Lewis-Begin was motivated by her friendship with Klein's wife to criticize Houldsworth's job performance. Such a motivation, however, would be attributable to personal animosity and would not meet the Title VII requirement that the alteration of terms and conditions of employment be "because of... sex." <u>See Succar</u>, 229 F.3d at 1345. The same reasoning applies to any alleged harassment committed directly by Klein. Even if we construe Houldsworth's allegations in the light most favorable to

---

formerly were analyzed under slightly varying tests, this court has indicated a willingness to abandon the distinction. <u>See Johnson v. Booker T. Washington Broad. Serv. Inc.</u>, 234 F.3d 501, 508 n.7 (11th Cir. 2000); <u>cf. Ellerth</u>, 524 U.S. at 751-54. The previous test for a prima facie case of <u>quid pro quo</u> sexual harassment, found in <u>Virgo v.Riviera Beach Assocs., Ltd.</u>, 30 F.3d 1350, 1361 (11th Cir. 1994), was similar to the <u>Mendoza</u> test laid out above. <u>See Johnson</u> for a discussion of the similarities between the two tests and the reasons for abandoning the distinction.

her, she merely portrays any action by Klein to have been taken because of his disappointment in their failed relationship. Again, such a motivation is not "because of... sex" within the meaning of <u>Oncale</u>.

This court does not today decide that once a consensual relationship between a supervisor and a subordinate is established, the subordinate could never then become victim to <u>quid pro quo</u> sexual harassment by that supervisor subsequent to the termination of the relationship. We hold only that the facts and circumstances of this case operate to take the motivation for any harassment that might have occurred out of the scope of Title VII.

We turn now to Houldsworth's retaliation claim. To establish a prima facie case of retaliation under Title VII, a plaintiff must prove the following elements: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. <u>See</u> <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000). Statutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC, and thus Houldsworth could establish a Title VII retaliation claim if she could prove the requisite causal nexus between either of these activities and an adverse employment decision. <u>See</u> <u>Rollins v. State of Fla. Dep't of Law</u>

Enforcement, 868 F.2d 397, 400 (11th Cir. 1989). Even assuming, however, that Houldsworth suffered an adverse employment action, any protected expression on her part occurred only after the commencement of the adverse employment actions of which she complains. According to Houldsworth's own allegations, she first notified someone within the City organization of her concerns in November or December of 1994. Her evaluations, though, began to suffer as early as October 1994.

As for Houldsworth's continuing negative evaluations, they were in response to well-documented job performance deficiencies.[4] Although Houldsworth asserts a claim of constructive discharge, her working conditions were not "so difficult... that a reasonable person would have felt compelled to resign." Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991) (quoting Wardwell v. Sch. Bd. of Palm Beach County, 786 F.2d 1554, 1557 (11th Cir. 1986)). Repeatedly receiving poor evaluations would be unpleasant for anyone, but it does not rise to the level of such intolerable conditions that no reasonable person would remain on the job. Further, we note that after the City Manager received notice of the affair, the City took immediate steps to address the situation. An investigation was conducted and

---

[4]For example, the City's hours history report verifies Houldsworth's attendance problems. Houldsworth's total sick leave taken in 1994 was 85.5 hours, and her total administrative sick leave taken in 1994 was 114.15 hours. From January 1995 through May 1995, Houldsworth took 18.5 hours of sick leave and 65.85 hours of administrative sick leave.

8

Klein was ordered to seek other employment.

## III. Conclusion

Viewing the facts in the light most favorable to Plaintiff-Appellant, we agree with the district court's finding that harassment, if any, suffered by Ms. Houldsworth was not the result of her gender, but rather in response to possible disappointment Klein may have experienced as a result of their failed relationship. We also agree that Houldsworth has failed to establish a retaliation claim as a matter of law. Accordingly, we affirm the district court's grant of summary judgment in favor of the City.

AFFIRMED.