[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 7, 2006
THOMAS K. KAHN
CLERK

No. 06-12573
Non-Argument Calendar

_____

D. C. Docket No. 03-00130-CV-JEC-1

CHARLES WHITE, JR.,

Plaintiff-Appellant,

versus

JOHN E. POTTER, Postmaster General,
United States Postal Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 7, 2006)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

I.

Charles White, Jr. appeals the judgment of the district court after a bench-trial finding that he failed to establish that he was discriminated against based upon his age. White also appeals the district court's decision not to refer the case to a special master's hearing prior to trial, the district court's decision to conduct a non-jury trial, and the district court's dismissal of his retaliation claim at summary judgment.

White, born in 1944, has been employed by the United States Postal Service since September 1969. In 1990, he began working at the North Metro mail processing facility in Duluth, Georgia, and, by 1993, had been promoted to Manager of Maintenance Operations ("MMO"), a position that included a pay grade of EAS-20. In November 1998, another MMO position became available at the Crown Road mail processing facility with a higher pay grade of EAS-22. White applied for the position and was rated qualified for the vacancy.

Jimmy Davenport was the Selecting Official for the Crown Road MMO vacancy, and his duties included reviewing the applications referred to him by a screening panel, conducting interviews of candidates, and recommending one candidate for selection. Davenport had known White since 1990 when he had been White's immediate supervisor. George Martin, Davenport's immediate supervisor

and the lead plant manager for the Atlanta metropolitan area, was the Concurring Official for the Crown Road MMO vacancy, and it was his responsibility to review the selection by Davenport and, if he agreed, concur with the decision so as to make it final.

The screening panel referred five applications to Davenport for review, including White's. Among the other applications was that of Sean Andrews, born in 1964. Andrews had been a postal employee for 18 years and, at the time of his application for the MMO vacancy, was an MMO in Albuquerque, New Mexico, with a pay grade of EAS-18. Through his participation in the National Maintenance Leadership Program ("NMLP"), however, a program to identify potential candidates for succession into maintenance department leadership positions, Andrews was detailed to an MMO position in New Jersey with a pay grade of EAS-23 at the time of his consideration for the Crown Road position.

Davenport conducted interviews of both White and Andrews and considered them close candidates with equal credentials. Subsequently, Davenport selected White for the Crown Road vacancy because the position had been open for six months and White was a local candidate who could fill the position quickly. Davenport then delivered his selection, along with the applications of all five candidates, to Martin for review. Martin did not know White or Andrews and also

3

did not know their respective ages. During the time period in which Martin was reviewing Davenport's decision, he spoke with the plant manager of the North Metro facility, David Williams, as part of a normal daily discussion. During this discussion, Martin asked about White, and the plant manager told Martin he was impressed with White's analytical abilities, but not his ability to supervise his subordinates. Several weeks after having made his recommendation and subsequent to Martin's discussion with the North Metro plant manager, Davenport discussed the selection with Martin. Davenport sensed that Martin wanted him to reconsider Andrews for the position. After further consideration, Davenport selected Andrews and Martin concurred.

When White learned he had not received the position in May 1999, he requested informal counseling for, among other things, age discrimination. In 2000, White was upgraded to the EAS-22 pay grade. He went on disability in 2001 and retired in 2002.

On January 16, 2003, White filed a complaint alleging employment discrimination for race and color and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. ("ADEA"). On September 24, 2004, the district court

4

adopted a report and recommendation from the magistrate judge granting the Postal Service's motion for summary judgment as to White's claim of retaliation. White's retaliation claim stemmed from his actions on behalf of another employee at the North Metro facility, Earl Blevins. According to White, Blevins was at some point removed from his position as Manager of Maintenance, but returned in 1997 after an EEO action. Upon his return, White alleges that Blevins was harassed by Williams. White argues that he undertook efforts to help Blevins keep his job and opposed efforts by Williams to fire older employees who were near retirement. White also alleges that he assisted Blevins with an EEO charge by providing him material support, such as supplying reports that showed the facility was performing well and speaking up for him at meetings. White claims that these actions resulted in his being retaliated against by not being selected for the MMO position at the Crown Road facility.

On October 13, 2005, the district court issued a notice of trial. White then objected to the district court's proceeding without first ordering that a special master's hearing be held. This objection was overruled. White later voluntarily withdrew his claims based on race and color. Prior to the commencement of the trial on the remaining issue of age discrimination, the Postal Service noted that White's dismissal of his race and color claims rendered moot his demand for a jury

5

trial. The district court agreed and proceeded with a bench trial. On March 30, 2006, the district court entered its Order and opinion granting judgment in favor of the Postmaster General. White now appeals.

## II.

On appeal from a district court order after a bench trial, we review the district court's conclusions of law *de novo* and its findings of fact for clear error. HGI Assocs., Inc. v. Wetmore Printing Co., 427 F.3d 867, 873 (11th Cir. 2005). This court reviews the district court's exercise of discretion in declining to refer the case for a special master's hearing under the abuse of discretion standard. Brown v. Blue Cross and Blue Shield of Alabama, Inc., 898 F.2d 1556 n.1 (11th Cir. 1990) ("[T]he standard of review in discretionary situations [is] abuse of discretion."). A district court's order on a motion for summary judgment is reviewed *de novo*. See Carter v. Galloway, 352 F.3d 1346, 1348 (11th Cir. 2003) ("[A]pplying the same legal standards that bound the district court."); see also Nunnally v. Equifax Information Services, LLC, 451 F.3d 768 (11th Cir. 2006).

## III.

First, White argues that the district court erred in finding that he failed to prove age discrimination. The district court concluded that the decision to promote Andrews, instead of White, was not motivated in any respect by considerations of

Andrew's or White's age. After careful review of the record as a whole, we agree with the district court's conclusion that there was insufficient factual evidence to prove a claim of age discrimination.

Second, White argues that the district court erred in declining to refer the case for a special master's hearing before trial. White argues that he was prejudiced by the district court's decision and contends that such referral was required because of the district court's reference to Internal Operating Procedure's for the Northern District of Georgia ("IOP") section 905-5 in its order dated November 4, 2004 and because of IOP section 920-2(a).[1] IOP section 905-5, however, is inapplicable to this case because that provision allows for trial before a magistrate judge only if the parties consent. As stated in White's own brief, the parties in this action did not consent to trial before a magistrate judge. With regard to IOP section 920-2(a), this provision applies only to cases that are brought pursuant to 42 U.S.C. § 2000e-2 (Title VII of the Civil Rights Act of 1964). As White's claim for discrimination is brought against an agency of the United States, however, it is brought pursuant to 48 U.S.C. § 2000e-16. Furthermore, even if IOP section 920-2(a) were applicable here, part (b) of the provision states that "[a]n individual judge may withdraw any reference made under this rule at any time

---

[1] It appears that though White did not specifically cite to IOP 920-2(a) in his brief, he quotes from this provision and incorrectly attributes it to IOP 905-5.

7

when in the judge's discretion the issues are unique, novel, or such withdrawal would otherwise be in the public interest." Finally, White withdrew his Title VII claims prior to trial. As such, we conclude that the district court did not abuse its discretion in refusing to refer the case to a special master.

Third, White argues that the district court improperly conducted a bench trial on the issue of age discrimination because the Postal Service had not, prior to the morning of trial, contested White's right to place this issue before a jury. As an initial matter, it appears that the Postmaster General had objected to White's request to place the age discrimination issue before a jury prior to trial in written objections on November 28, 2005. Nevertheless, White voluntarily withdrew his Title VII race and color claims shortly before the commencement of the trial, leaving only the age discrimination claim. As there is no right to trial by jury for federal employees bringing suit under the ADEA, the district court correctly conducted a bench trial. See Lehman v. Nakshian, 453 U.S. 156 (1981).

Finally, White argues that the district court erred in dismissing his retaliation claim at summary judgment. To establish a prima facie case of retaliation under Title VII, a plaintiff must prove (1) that he participated in an activity protected by Title VII, (2) that he suffered an adverse action,[2] and (3) that there is a causal

---

[2] The Supreme Court recently addressed the retaliatory act element of a Title VII retaliation claim in Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. —, 126 S.Ct. 2405, 165

8

connection between the participation in the protected activity and the adverse decision.  Pipkins v. City of Temple Terrace, 267 F.3d 1197, 1201 (11th Cir. 2001).  White alleges that he reasonably believed that he was engaged in protected activity and that there was a causal connection between the protected activity and his not receiving the promotion at issue here.  After careful review of the record as a whole, we conclude that there was insufficient factual evidence to support White's claim of retaliation.

Accordingly, we **AFFIRM.**

---

L.Ed.2d 345 (2006).  The Court held that "the scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and therefore, "is not limited to discriminatory actions that affect the terms and conditions of employment."  Id. at 2412-14.