[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 21, 2010
JOHN LEY
CLERK

_____

No. 10-10147
Non-Argument Calendar

_____

D. C. Docket No. 2:08-cv-00268-WKW-CSC

ELIZABETH WALTON-HORTON,

Plaintiff-Appellant,

versus

HYUNDAI OF ALABAMA,
TOMMY CERTAIN,
ERIC GEORGE,

Defendants-Appellees,

GABRIELLA SMITH,
Team Relations Representative,

Defendant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(October 21, 2010)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Elizabeth Walton-Horton, proceeding *pro se*, appeals the district court's grant of summary judgment in favor of her former employer, Hyundai Motor Manufacturing Alabama, LLC (Hyundai), in her employment-discrimination suit filed under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e-2(a).

I. Background

Walton-Horton worked for Hyundai as a technical support specialist. From June 2005 until she was fired, she worked in the paint shop. Tommy Certain and Eric George were also technical support specialists, but they worked in other departments. Certain and George would sometimes make jokes or use foul language, which initially did not bother Walton-Horton, but she did report Certain several times after he made sexual remarks. The supervisors advised Certain that such remarks were inappropriate. In early 2006, Walton-Horton reported to a Team Relations member that Certain and George had been making comments that were demeaning to women. By this time, Walton-Horton's relationship with Certain and George had deteriorated, and the two men had filed their own complaints against Walton-Horton.

In March 2006, Gabriella Smith, a Team Relations representative,

interviewed Walton-Horton as part of an investigation into Certain's and George's complaints. Smith also interviewed other employees, who stated that Walton-Horton had used foul language, made inappropriate sexual comments at work, and exposed herself to other employees. Although Walton-Horton denied the allegations against her and claimed that Smith was biased, she was terminated for "behav[ing] in a manner that created a hostile work environment of a sexual nature." In addition, as a result of the investigation, Certain received a serious misconduct letter after he admitted using profanity and making inappropriate remarks.

Walton-Horton then sued Hyundai and in an amended complaint alleged that it had engaged in gender discrimination and retaliation when it terminated her employment after she complained of sexual harassment. In addition to her Title VII claims, she asserted state law claims for defamation, libel, slander, and negligent supervision.

Hyundai moved for summary judgment, which the district court granted. The district court found that Walton-Horton had failed to establish a *prima facie* case of discrimination or retaliation. The court explained that Walton-Horton had not shown that similarly situated male employees were treated more favorably than she was because Certain's conduct was less serious than hers. The court further

3

found that, although there was close temporal proximity between Walton-Horton's complaints and her termination, Smith had not been aware of Walton-Horton's complaints before she began her investigation.

Walton-Horton filed a timely motion to alter or amend judgment, which the court denied on December 8, 2009. Walton-Horton then filed a notice of appeal, indicating her intent to appeal the December 8 order.

II. Jurisdiction

As an initial matter, we review *de novo* questions concerning our subject-matter jurisdiction. *Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006). "The general rule in this circuit is that an appellate court has jurisdiction to review only those judgments, orders or portions thereof which are specified in an appellant's notice of appeal." *Osterneck v. E.T. Barwick Indus., Inc.*, 825 F.2d 1521, 1528 (11th Cir. 1987); Fed. R. App. P. 3(c)(1)(B). But we will liberally construe a notice of appeal when "(1) unnoticed claims or issues are inextricably intertwined with noticed ones and (2) the adverse party is not prejudiced." *Hill v. BellSouth Telecomms., Inc.*, 364 F.3d 1308, 1313 (11th Cir. 2004) (quotation marks omitted). Specifically, we have held that a *pro se* notice of appeal from an order on a tolling post-judgment motion must be construed as an appeal from the original judgment also, where it is clear that the appellant intended to appeal from

the underlying judgment. *Kicklighter v. Nails By Jannee, Inc.*, 616 F.2d 734, 738 n.1 (5th Cir. 1980).[1]

Here, although Walton-Horton's notice of appeal only referenced the denial of her tolling motion to alter or amend judgment, it is clear that Walton-Horton intended to challenge the grant of summary judgment. Moreover, there is no indication that Walton-Horton's limited notice of appeal prejudiced or misled Hyundai. Accordingly, we have jurisdiction over the underlying order granting summary judgment.

III. Discussion[2]

We "review the grant of summary judgment *de novo*, viewing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

[2] Walton-Horton has abandoned her challenges to the district court's denial of her motion to amend judgment, the district court's finding that her state-law claims were time-barred, and the order granting summary judgment on those claims. *Access Now, Inc. v. Southwest Airlines, Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

56(c); *Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006). "A fact is material only when the dispute over it has the potential to change the outcome of the lawsuit under the governing law if found favorably to the nonmovant." *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997). Speculation or conjecture from a party cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

A.     Discrimination

Title VII makes it unlawful for an employer to discharge an individual because of that individual's sex. *See* 42 U.S.C. § 2000e-2(a)(1). Where, as here, a plaintiff offers circumstantial evidence to prove a claim of discrimination, we evaluate the claim using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*). Under this approach, if a plaintiff can establish a *prima facie* case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the

6

employment decision. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this burden, then the burden shifts back to the plaintiff to show that the reasons given were a pretext for discrimination. *Burdine*, 450 U.S. at 253.

A plaintiff may establish a *prima facie* case of discriminatory termination under Title VII by showing that she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was treated less favorably than a similarly situated individual outside her protected class. *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Only the fourth element is at issue here.

When a plaintiff alleges discriminatory discipline, "to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Burke-Fowler*, 447 F.3d at 1323 (quotation marks omitted); *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (holding that the most important factors "are the nature of the offenses committed and the nature of the punishment imposed"). We "require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *see also Burke-Fowler*, 447 F.3d at 1323, n.2 (noting that

two lines of cases developed interpreting the "similarly situated" prong, and holding that we are bound by the "earliest case" doctrine to use the "nearly identical" standard). We do "not sit as a super-personnel department that reexamines an entity's business decisions," and our "inquiry is limited to whether the employer gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1030.

Here, Walton-Horton failed to identify any male comparators who engaged in conduct "nearly identical" to that for which she was discharged. Although she alleged that Certain's behavior was inappropriate, Smith's investigation included statements from witnesses that Walton-Horton's conduct extended beyond inappropriate comments. Walton-Horton's bare assertions that Certain is a comparator are insufficient to make a *prima facie* showing. Accordingly, because Walton-Horton failed to show any similarly situated male employee was treated more favorably, summary judgment was proper on this claim.

B.    Retaliation

Title VII prohibits retaliation in the employment context:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

8

42 U.S.C. § 2000e-3(a).

We apply the same *McDonnell Douglas* framework to claims of retaliation based on circumstantial evidence. *Holifield v. Reno*, 115 F.3d 1555, 1564-66 (11th Cir. 1997). To establish a *prima facie* case, a plaintiff must show that (1) she engaged in statutorily protected expression, (2) her employer subjected her to an act that would have been materially adverse to a reasonable employee or job applicant, and (3) there is some causal relation between the two events. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006).

Statutorily protected expression includes internal complaints of discrimination to superiors, complaints lodged with the Equal Employment Opportunity Commission, and discrimination-based lawsuits. *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001). To establish a causal connection, a plaintiff must show that the decisionmaker was aware of the protected activity and that there is "a close temporal proximity between this awareness and the adverse . . . action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). "[T]emporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir.

9

2000) (citation omitted). Furthermore, "[e]mployers need not suspend previously planned [adverse employment actions] upon discovering [protected activity]." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (holding that if, after discovering protected activity, employers proceed "along lines previously contemplated, though not definitively determined," their actions are not evidence of causality).

In this case, Walton-Horton failed to prove a *prima facie* case of retaliation because the undisputed facts show no causal connection between her complaints and her discharge. Smith, who recommended Walton-Horton be discharged, had no knowledge of Walton-Horton's pre-investigation complaints, and Walton-Horton only complained to Smith after Smith had already begun investigating her behavior. Because Smith was unaware of the protected activity at the time she recommended Walton-Horton's termination, the fact that she later learned of Walton-Horton's complaints does not establish a causal connection. Accordingly, summary judgment was proper on this claim as well.

**AFFIRMED.**