[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17302
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00022-RH-CAS

CHANDRA FIELDS,

Plaintiff - Appellant,

versus

DEPARTMENT OF JUVENILE JUSTICE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 25, 2017)

Before MARTIN, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Chandra Fields appeals the jury verdict in favor of the Florida Department of Juvenile Justice on her racial discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981a; and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10. Ms. Fields argues that the district court's jury instructions and verdict form for her retaliation claim misstated the law regarding protected conduct, which confused and misled the jury and caused her prejudice. Upon review of the record and the parties' briefs, we affirm.

## I

Because we write for the parties, we assume their familiarity with the underlying record and recite only what is necessary to resolve this appeal.

Ms. Fields, who is African American, worked as a Government Operations Consultant in the leasing division of the DJJ. Ms. Fields alleged that she was treated less favorably than white co-workers because her supervisor, Michele Lewis, only trained white employees on new procedures and documented African American employees for not being familiar with the new system and harassed them through abusive emails. She also alleged that she was terminated on May 29, 2014, in retaliation for reporting the racial discrimination to Sylvia Baker in the DJJ's human resources division.

2

On the first day of trial, Ms. Fields testified that she complained to Ms. Baker in mid-April of 2014 that Ms. Lewis discriminated against her on the basis of race. Evidence also showed that on June 14, 2014, Ms. Fields filed a charge of discrimination with the Equal Employment Opportunity Commission alleging racial discrimination and retaliation. The EEOC notified the DJJ of the charge, prompting Derrick Elias, the DJJ's Equal Employment Opportunity officer, to conduct an internal investigation.

The district court held a charge conference before the second day of trial. Its proposed retaliation charge instructed the jury that it needed to find, by the greater weight of the evidence, that "Ms. Fields complained in good faith to an appropriate person about racial discrimination" and that the DJJ terminated Ms. Fields because of the complaint. The instruction clarified that an "appropriate person" was "anyone above Ms. Fields in her chain of command or any human-relations employee" of the DJJ. D.E. 56 at 5–6. Similarly, the proposed verdict form question for the retaliation asked whether Ms. Fields complained in good faith to an appropriate person about racial discrimination.

Ms. Fields' counsel objected to the retaliation claim instruction, arguing that it required that Ms. Fields had to have complained about the discrimination to a particular person. Her counsel confirmed that the retaliation claim was based on the reporting to Ms. Baker, but that there may be testimony that she complained to

3

Mr. Elias. Counsel admitted that the proposed jury instruction covered the facts of the case, but was concerned it "may backfire on [him] in some way." D.E. 76 at 167–68. The district court declined to alter the instruction, but said it would if counsel elicited any evidence suggesting that Ms. Fields engaged in protected conduct not covered by the instruction.

During the second day of trial, Ms. Baker testified that Ms. Fields had complained that Ms. Lewis treated her differently than other employees, but could not recall that the complaint was based on racial discrimination. She also explained that she did not deal with race discrimination complaints and that Mr. Elias, the DJJ's EEO officer, handled them. After the DJJ rested, Ms. Fields' counsel agreed that the testimony had not changed from what was discussed during the charge conference.

The district court instructed the jury on the retaliation claim as set forth in its proposed jury instructions. Before returning its verdict, the jury presented the district court with a question, asking whether Ms. Fields' EEOC complaint—filed after her termination—could be considered complaining in good faith to an appropriate person. The district court answered that the verdict form should be read to refer only to a complaint made before her termination. Ms. Fields' counsel again objected to the use of the phrase "appropriate person." The jury returned a verdict

4

in favor of the DJJ on both the discrimination and retaliation claims. This appeal followed.

## II

We review jury instructions for abuse of discretion, and in doing so, consider them in context. *See Gowski v. Peake*, 682 F.3d 1299, 1310, 1315 (11th Cir. 2012). "A trial court is given wide discretion as to the style and wording of jury instructions, and on appeal we review the court's instructions only to determine that they show no tendency to confuse or to mislead the jury with respect to the applicable principles of law." *Samples v. City of Atlanta*, 916 F.2d 1548, 1550 (11th Cir. 1990) (internal quotation marks and citation omitted). A district court errs if there is no basis in the record for the instruction given. *See Gowski*, 682 F.3d at 1315. We apply the same deferential standard of review to a verdict form as that applied to the district court's jury instructions. *See McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1072 (11th Cir. 1996). But we review *de novo* whether the jury instructions and verdict form accurately reflect the law. *Id.*

## III

Ms. Fields argues that by stating that she must have complained to an "appropriate person," the district court's jury instruction and verdict form on the retaliation charge misstated the law and created confusion and misled the jury. We disagree.

5

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that she (1) engaged in statutorily protected activity; (2) suffered an adverse employment action; and (3) there was some causal relationship between the two events. *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001). *See also Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (explaining that "Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII"). Statutorily protected expression includes internal complaints of discrimination to superiors and complaints lodged to the EEOC. *See Pipkins*, 267 F.3d at 1201. The protection afforded is not limited to formal complaints, and includes informal complaints to superiors or use of an employer's internal grievance procedures. *See Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). To establish a causal connection, a plaintiff at minimum must show that the decisionmaker was actually aware of the protected activity at the time it took adverse employment action. *See Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).

The jury instructions and verdict form here accurately reflected the law regarding protected conduct, and conformed to the evidence presented at trial. The jury instructions explained that Ms. Fields did not need to complain about racial discrimination using any specific procedure and defined an "appropriate person" as

6

"anyone above [her] in her chain of command or any human-relations employee" at the DJJ. Taking this language as a whole, the requirement that Ms. Fields complain to an appropriate person is consistent with our case law, which provides that protected conduct under Title VII includes complaints to supervisors about discrimination and using an employer's internal grievance procedures. *See Pipkins*, 267 F.3d at 1201; *Rollins*, 868 F.2d at 400.

Although Title VII does protect against retaliation for conduct beyond complaining about racial discrimination to "anyone above Ms. Fields in her chain of command or any human-relations employee" of the DJJ, the only protected conduct that Ms. Fields actually alleged at trial was complaining to Ms. Baker and Mr. Elias about Ms. Lewis' actions. The jury instructions therefore covered the facts of the case, which Ms. Fields' counsel conceded at the charge conference.

Ms. Fields argues that the Eleventh Circuit pattern jury instructions for a retaliation claim do not include language requiring a plaintiff to report discrimination to an "appropriate person." But the instructions do require a description of the protected activity alleged, and the district court's jury instruction was consistent with this requirement. *See* 11th Cir. Pattern Jury Inst. 4.22 ("For the first element, [name of plaintiff] claims that [he/she] engaged in protected activity when [he/she] [described opposition clause activity]. That action is "protected activity" if it was based on [name of plaintiff]'s good-faith, reasonable belief that

[name of defendant] discriminated against [him/her/another employee] because of [protected trait]."). Accordingly, the district court's jury instructions and verdict form did not misstate the law.

Nor did the jury instructions and verdict form mislead the jury. As explained, the instructions and form covered the facts of the case. Ms. Fields argues that the jury's question regarding her complaint made to Mr. Elias after her termination indicated its confusion. But it appears that this question addressed the timing of the complaint, rather than the person to whom the complaint was made. Ms. Fields also argues that the DJJ's closing argument emphasizing that she did not complain to Ms. Baker about racial discrimination and that Mr. Elias handled such complaints, in combination with the instruction, misled the jury. The DJJ's closing argument is better interpreted as addressing the content of Ms. Fields' complaint to Ms. Baker, not whether Ms. Baker was an "appropriate person." Indeed, Ms. Baker herself testified that she was unsure whether Ms. Fields complained to her about racial discrimination, particularly given the fact that those types of complaints typically would be made to Mr. Elias, and not to her.[1]

---

[1] To the extent Ms. Fields argues that the district court impermissibly grafted a *Faragher*-style defense requirement onto the protected expression, we disagree. A defense under *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), allows an employer to avoid liability for a supervisor's harassment if there was no tangible employment action taken against the employee. *See Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1281 (11th Cir. 2003). The instructions did not allow the DJJ to avoid liability on this basis.

## IV

Because the district court did not err in instructing the jury, the jury's verdict in favor of the DJJ is affirmed.

**AFFIRMED.**